IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Elsie Marie Allen, as Personal Representative of the Estate of Donna Lea Swaim, | ) ) ) | C.A. No. 6:04-2327-HMH |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| Greenville Hotel Partners, Inc., and R.G. Hospitality, LLC, and Ronald Gedda, and Choice Hotels International, Inc., and R.G. Properties, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| Keith Barfield, as Personal Representative of the Estate of Allison Barfield | ) ) ) | C.A. No. 6:04-1260-HMH |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| Choice Hotels International, Inc., RG Hospitality, LLC, Greenville Hotel Partners Inc., Ronald Gedda, and RG Properties, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

1

| | |
|---|---|
| William E. Harrell, Jr., ) | |
| ) | C.A. No. 6:04-2328-HMH |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Greenville Hotel Partners, Inc., and R.G. ) | |
| Hospitality, LLC, and Ronald Gedda, and ) | |
| Choice Hotels International, Inc., and R.G. ) | |
| Properties, LLC, ) | |
| ) | |
| Defendants. ) | |
| -------------------------------------------------- ) | |
| Nicholas R. Wilkerson, ) | |
| ) | C.A. No. 6:05-2142-HMH |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Greenville Hotel Partners, Inc., R.G. ) | |
| Hospitality, LLC, Ronald Gedda, Choice ) | |
| Hotels International, Inc., and R.G. ) | |
| Properties, LLC, ) | |
| ) | |
| Defendants. ) | |

**OPINION & ORDER**

This matter is before the court on R.G. Properties, LLC's ("RGP") motion for summary judgment. For the reasons stated below, the court grants RGP's motion in part and denies it in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

These cases concern a fire which occurred in the early morning hours of January 25, 2004, at the Comfort Inn and Suites located at 831 Congaree Road in Greenville, South Carolina ("the Comfort Inn"). (Pls.' Mem. Opp'n R.G. Hospitality/Ronald Gedda's Mot. Summ. J. 2.) Allison Barfield ("Barfield") and Donna Lee Swaim ("Swaim"), as well as four other guests at

2

the Comfort Inn, were killed in the fire. William E. Harrell, Jr. ("Harrell"), Nicholas R. Wilkerson ("Wilkerson"), and ten others were seriously injured. (Id.) The cause of the fire was arson, and Eric Preston Hans has been indicted for the crime. United States v. Hans, Cr. No. 05-1227 (D.S.C. Nov. 16, 2005). The factual and procedural histories of these cases have been set forth in detail in this court's orders and opinions granting summary judgment to Choice Hotels International, Inc. ("Choice"), which were entered on January 12, 2006, in civil action numbers 04-cv-1260 ("Barfield Action"), 04-cv-2727 ("Allen Action"), and 04-cv-2728 ("Harrell Action"), and on April 5, 2006, in civil action number 05-cv-2142 ("Wilkerson Action"). The court incorporates the factual and procedural histories set forth in those opinions herein.

RGP owns and operates a Quality Inn and Suites ("Quality Inn") in Greenville, South Carolina. (RGP's Mem. Supp. Summ. J. Ex. A (Ronald Gedda Aff. ¶ 6).) In the complaints filed in the Allen, Harrell, and Wilkerson Actions, the Plaintiffs allege that "Defendant R.G. Properties, LLC had agents, employees, and representatives acting within the course and scope of their employment or agency, and that such acts contributed to the injuries and damages" the Plaintiffs suffered as a result of the fire. (Allen Second Am. Compl. ¶ 13; Harrell Second Am. Compl. ¶ 13; Wilkerson Compl. ¶ 14.) Similarly, the complaint in the Barfield Action alleges that RGP's "agents committed negligent acts at the Comfort Inn that contributed to the injuries and damages suffered by the Plaintiff." (Barfield Second Am. Compl. ¶ 15.)

RGP filed its motion for summary judgment on May 11, 2006, arguing that it is neither liable for an alleged breach of the warranties of habitability and fitness for a particular use nor liable for any negligence in connection with the fire. The Plaintiffs responded on June 1, 2006,

3

contending that RGP is liable for the allegedly negligent acts of one of its employees, William Messer ("Messer").  RGP replied on June 12, 2006.

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-moving party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.  Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**B. Breach of Warranty**

With the exception of Keith Barfield, Barfield's personal representative, the Plaintiffs allege an action for breach of warranty against the Defendants, including RGP. Harrell, Wilkerson, and Elsie Marie Allen ("Allen"), Swaim's personal representative, contend "[t]hat Defendants expressly and impliedly warranted to the public, including the [Decedent or Plaintiff], that the rooms at the subject Comfort Inn and Suites were safe, habitable and fit for their intended purpose." (Harrell Second Am. Compl ¶ 64; Wilkerson Compl. ¶ 64; Allen Second Am. Compl. ¶ 53.) Moreover, Harrell, Wilkerson, and Allen allege "[t]hat Defendants further expressly warranted to the public that the Comfort Inn and Suites in question was adequately protected by sprinklers, which representation was false and fraudulent." (Harrell Second Am. Compl ¶ 64; Wilkerson Compl. ¶ 64; Allen Second Am. Compl. ¶ 53.) They argue that the Defendants made these misrepresentations to promote their profits, that Harrell, Wilkerson, and Swaim each relied on those warranties in renting a room in the hotel, and that injury and death resulted from the Defendants' breach of the warranties. ((Harrell Second Am. Compl ¶¶ 65-66, 70; Wilkerson Compl. ¶¶ 65-66, 70; Allen Second Am. Compl. ¶¶ 53-54, 57.)

In its motion for summary judgment, RGP argues that "[t]here is absolutely no evidence R.G. Properties made any representations regarding the Comfort Inn to anyone," and, because RGP did not own or operate the Comfort Inn, it would have no reason to make any representation to anyone about the Comfort Inn. (RGP's Mem. Supp. Summ. J. 7.) The Plaintiffs do not contest RGP's motion on this issue. Therefore, the court grants RGP's motion for summary judgment on this issue. As such, the Plaintiffs may not recover against RGP on a theory of implied warranty of habitability or fitness for a particular use.

### C. Negligence

The Plaintiffs have also asserted that RGP was negligent. To prevail on a negligence claim in South Carolina, "a plaintiff must show the (1) defendant owed a duty of care to the plaintiff[;] (2) defendant breached the duty by a negligent act or omission[;] (3) defendant's breach was the actual and proximate cause of the plaintiff's injury[;] and (4) the plaintiff suffered injury or damages." Jackson v. Swordfish Invs., L.L.C., 620 S.E.2d 54, 56 (S.C. 2005). "Whether the law recognizes a particular duty is an issue of law to be determined by the court." Id.

In arguing that it is entitled to summary judgment on the Plaintiffs' negligence claims, RGP first argues that it cannot be liable on a negligence theory because RGP had no duty to the Plaintiffs, as it had no control over the Comfort Inn. (RGP's Mem. Supp. Summ. J. 4); Miller v. City of Camden, 494 S.E.2d 813, 815 (1997) ("One who controls the use of property has a duty of care not to harm others by its use. Conversely, one who has no control owes no duty." (Internal citations and quotation marks omitted).) Of course, if RGP owed no duty to the Plaintiffs, then the Plaintiffs' negligence claims against RGP also fail on the second element, breach of duty. (RGP's Mem. Supp. Summ. J. 6.)

RGP further asserts that even if it owed a duty to the Plaintiffs and breached that duty, its actions were not the proximate cause of the Plaintiffs' injuries. RGP argues that the Plaintiffs' injuries were proximately caused by "an intervening act of the arsonist who set the hotel on fire, and, therefore, R.G. Properties is not liable." (Id. 6-7.)

In response, the Plaintiffs argue that RGP's liability arises not from control of the Comfort Inn, but under the doctrine of respondeat superior for Messer's allegedly negligent acts

6

while working at the Comfort Inn the day before the fire. It is undisputed that Messer assumed the responsibility of emptying the boxes of the furniture they contained and removing the empty boxes from the hallway of the Comfort Inn, that he left many of the boxes in the hallway, and that those boxes were used to start the fire. In its reply, RGP argued that it cannot be liable under respondeat superior because Messer was the borrowed servant of R.G. Hospitality ("RGH"), the company which operates the Comfort Inn. (Choice's Mem. Supp. Summ. J. Ex. A (Gedda Dep. 6).) Further, RGP reiterates its argument that the intervening act of the arsonist forecloses any potential liability of RGP's.

### 1. Respondeat Superior

"The modern doctrine of respondeat superior makes a master liable to a third party for injuries caused by the tort of his servant committed within the scope of the servant's employment." Wade v. Berkeley County, 498 S.E.2d 684, 688 (S.C. Ct. App. 1998) (internal quotation marks omitted). "[A]n act is within the scope of a servant's employment where [the act is] reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business." Adams v. South Carolina Power Co., 21 S.E.2d 17, 19 (S.C. 1942).

At the time of the fire, Messer was a security guard at the Quality Inn. (Pls.' Mem. Opp'n Summ. J. Ex. A (Messer Dep. 5).) The day before the fire, Messer was at the Quality Inn when the manager, Lawrence Coleman ("Coleman"), sent Messer to the Comfort Inn to assist with installing new furniture. (Id. Ex. A (Messer Dep. 10, 33).) Upon arriving at the Comfort Inn, Messer was instructed to take the new furniture out of the boxes to allow other workers to move the furniture. (Id. Ex. A (Messer Dep. 10).) Messer further assumed the duty of taking the boxes out of the hotel, but did not finish the job before stopping that afternoon. (Id. & Ex. D

7

(Mitchell Dep. 60).)  The following day, after the fire, Messer was instructed by the manager of the Comfort Inn to clean up some of the glass from windows that had been broken during the fire.  (Id. Ex. A (Messer Dep. 33).)  Afterward, Messer returned to work at the Quality Inn.  (Id. Ex. A (Messer Dep. 33, 5).)

The question of whether Messer's assisting at the Comfort Inn was within the scope of his employment is ultimately one of fact for the jury to decide.  Adams, 21 S.E.2d at 18-19; compare Shuler v. Gregory Elec., 622 S.E.2d 569, 571 (S.C. Ct. App. 2005) (noting, in considering a claim for workers' compensation, that "[g]enerally, it is a question of fact whether an injury arose out of and was in the scope of employment").  Although a jury could find that Messer's actions were not in furtherance of RGP's interests and beyond the scope of Messer's job as a security guard, the circumstances of Messer's employment counsel otherwise.  First, Messer testified during his deposition that he had done some maintenance work while employed at the Quality Inn, so his employment was not limited to security work.  (Id. Ex. A (Messer Dep. 27).)  Moreover, Coleman sent Messer to work at the Comfort Inn, and Messer thought that RGP (via Coleman) was going to pay him for his work at the Comfort Inn.  (Id. Ex. A (Messer Dep. 30-31).)

Furthermore, while Gedda claimed that RGP and RGH are "separate and distinct corporate entities . . . which bear no relation to each other" and that R.G.P. "[d]oes not perform any maintenance or repair on the subject Comfort Inn, nor did it do so at the time of the fire," the evidence in the record, viewed in the light most favorable to the Plaintiffs, reveals that the two companies were not entirely independent.  First, at least one of the people who did general maintenance work, Jerry Mitchell ("Mitchell"), worked at both the Quality Inn and the Comfort

8

Inn. (Pls.' Mem. Opp'n Summ. J. Ex. A (Messer Dep. 25, 27) & Ex. D (Mitchell Dep. 12-13, 23, 60).) Second, Messer testified that he knew Gedda, who is the majority owner of RGH and sole owner of RGP, could fire him at any time. (Pls.' Resp. Opp'n Choice's Summ. J. Ex. A (Gedda Dep. 4); RGP's Mem. Supp. Summ. J. Ex. A (Gedda Aff. ¶ 2); Pls.' Mem. Opp'n Summ. J. Ex. A (Messer Dep. 17). ) Further, Messer confirmed that, while he was working, whether he was at the Comfort Inn or the Quality Inn, he was subject to Gedda's instruction. (Pls.' Mem. Opp'n Summ. J. Ex. A (Messer Dep. 17). ) Hence, viewing the evidence in the light most favorable to the Plaintiffs, Messer's brief assistance with furniture installation at the Comfort Inn could have been within the scope of Messer's employment, and a jury could find that RGP is liable for Messer's actions on the basis of respondeat superior.

Nonetheless, RGP argues that it cannot be liable under a theory of respondeat superior because Messer was a borrowed servant of RGP's. "[I]t is clear an employer may lend his employee to another so as to be relieved from liability for an injury caused by the negligence of the employee in performing work for the other." Parker v. Williams & Madjanik, Inc., 239 S.E.2d 487, 489 (S.C. 1977). However, "it is equally true that an employer may direct his employee to go upon the premises of another and perform work there under the general supervision of the other person without severing the employment relation between the employer and the employee." Id. The key question is whether RGH or RGP had control over Messer while Messer was working at the Comfort Inn. See Foreman v. Atl. Land Corp., 245 S.E.2d 609, 611 (S.C. 1978).

The court ultimately concludes that a factual issue exists as to which company, RGH or RGP, controlled Messer. Cf. id. There is no dispute that Messer was employed by RGP as a

9

security guard both before and after the fire. On the day before the fire, the Quality Inn's manager, Coleman, sent Messer to the Comfort Inn and gave Messer general instructions as to what to do there. Messer received more specific instructions at the Comfort Inn. ((Pls.' Mem. Opp'n Summ. J. Ex. A (Messer Dep. 5).) Messer served at the Comfort Inn for only one day, and returned to continue his employment with the Quality Inn. (Id. Ex. A (Messer Dep. 33, 5).) Messer understood that he was subject to Gedda's control while he was working at either hotel, and that Gedda could fire him. (Pls.' Mem. Opp'n Summ. J. Ex. A (Messer Dep. 17).) Messer's wages for the work at the Comfort Inn were set by Coleman at the Quality Inn, though he was ultimately not paid those wages and only received a free stay at the Comfort Inn for compensation. (Id. Ex. A (Messer Dep. 20-21, 31)); cf. Cooke v. Palmetto Health Alliance, 624 S.E.2d 439, 443 (S.C. Ct. App. 2005) (noting factors which apply when a court determines whether an employee was a borrowed servant in a workers' compensation case, and, in determining whether the borrowing employer has the right to "control the details of the employee's work," considering the borrowing employer's right to fire the employee, the method of payment, the right to exercise control, and the furnishing of equipment to the borrowed servant).

In fact, Messer claims that he never turned in a time sheet to Coleman for the hours he worked at the Comfort Inn because he "talked to a couple of people about it" and "they all wanted to keep it hush-hush, so [he] just shut up about it," remarking that "it was just six hours or something." (Id. Ex. A (Messer Dep. 31).) Had Messer submitted a time sheet to be paid by the Quality Inn, there is no indication that the Quality Inn would not have paid him.

In sum, there is substantial evidence that supports a finding that the Quality Inn retained control of Messer for the brief time he was working at the Comfort Inn. As such, the issue of whether Messer was subject to the control of RGH such that he qualifies as a borrowed servant is a question of fact for the jury to decide. See Foreman 245 S.E.2d at 611.[1] Accordingly, RGP may have had a duty and breached that duty via Messer under the doctrine of respondeat superior, and RGP is not entitled to summary judgment on that basis.

*2. Proximate Cause/Intervening Criminal Act*

RGP also argues that, even if it breached its duty via Messer's negligence, RGP cannot be liable on a negligence theory because Messer's act of leaving the boxes overnight did not proximately cause the Plaintiffs' injuries. RGP relies on Stone v. Bethea, 161 S.E.2d 171, 173-74 (S.C. 1968), to argue that Messer could not have reasonably foreseen that an arsonist would use the boxes to ignite a fire in the Comfort Inn.

"Foreseeability of some injury from an act or omission is a prerequisite to its being a proximate cause of the injury for which recovery is sought." Id. at 173.

> The test, therefore, by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent act of another, is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in the light of attendant circumstances. The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, there is no liability. One is not charged with foreseeing that which is unpredictable or that which could not be expected to happen. When the negligence appears merely to have brought

---

[1] The Plaintiffs argue that, even if RGP was not exclusively in control of Messer, RGP and RGH shared dual control over Messer, and both are liable for his allegedly negligent acts under the dual-liability doctrine. (Pls.' Mem. Opp'n Summ. J. 10-12.) Because the court concludes that Messer's status as a borrowed servant is a question of fact, the court needs not decide whether the dual-liability doctrine applies.

11

>about a condition of affairs, or a situation in which another and entirely
>independent and efficient agency intervenes to cause the injury, the latter is to be
>deemed the direct or proximate cause, and the former only the indirect or remote
>cause.

Id. at 173.

However, "[t]he law is well settled that in order to establish liability it is not necessary that the person charged with negligence should have contemplated the particular event which occurred. It is sufficient that he should have foreseen that his negligence would probably cause injury to something or someone." Childers v. Gas Lines, Inc., 149 S.E.2d 761, 765 (S.C. 1966) (emphasis added). Further, "[i]f the actor's conduct is a substantial factor in the harm to another, the fact that he neither foresaw nor should have foreseen the extent of harm or the manner in which it occurred does not negative [sic] his liability." Id. (emphasis added).

"Ordinarily, the question of proximate cause is one of fact for the jury and the trial judge's sole function regarding the issue is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence." Vinson v. Hartley, 477 S.E.2d 715, 721 (S.C. Ct. App. 1996). In fact, "[o]nly in rare or exceptional cases may the question of proximate cause be decided as a matter of law." Ballou v. Sigma Nu Gen. Fraternity, 352 S.E.2d 488, 493 (S.C. Ct. App. 1986).

After careful consideration, the court concludes that the instant case is not "rare" or "exceptional" such that the proximate cause issue should be resolved as a matter of law. While Messer may not have anticipated that an arsonist would use the boxes to start a fire, a jury could find that Messer should have foreseen the risk of leaving cardboard boxes in the hotel's hallway. For clarification, Messer did not leave only one or two boxes in the hall, but rather left numerous boxes "halfway down the wall [of the hall] and all the way down the steps." (Pls.'

Mem. Supp. Summ. J. Ex. A (Messer Dep. 22.)  In fact, any doubt as to the foreseeability of the boxes catching fire is dispelled by Gedda's own words for wanting the boxes removed.  After commenting, "I don't like cardboard from empty boxes in any of my places" and being asked to explain why, Gedda responded, "Flammability.  Somebody dropping a cigarette in them, starting a fire."  (Id. Ex. C (Gedda Dep. 204-05).)  Gedda gave that reason for asking Mitchell and those installing the furniture to remove the boxes from the Comfort Inn.  (Id.)  Hence, a jury could find that someone igniting the boxes in the hallway was foreseeable, and was in fact acknowledged by the person in control of RGH, Gedda, before the fire occurred.  Cf. Oliver v. South Carolina Dept. of Highways and Pub. Transp., 422 S.E.2d 128, 131 (S.C. 1992) (noting that the defendant's own witness acknowledged the risk which resulted in the injury in finding that a jury issue existed as to proximate cause and upholding the jury's finding).  For all of these reasons, the court finds that the issue of proximate cause is one for the jury, and RGP is not entitled to summary judgment on the Plaintiffs' claims for negligence.

It is therefore

**ORDERED** that RGP's motion for summary judgment, docket number 111 in the Barfield Action, docket number 96 in the Allen Action, docket number 97 in the Harrell Action, and docket number 55 in the Wilkerson Action, is granted in part and denied in part.

**IT IS SO ORDERED.**

                                          s/Henry M. Herlong, Jr.
                                          United States District Judge

Greenville, South Carolina
June 30, 2006